SUBSCRIBERS AT the AUTOMOBILE CLUB INTER–INSURANCE EXCHANGE et al., Plaintiff–Appellant,

v.

Darrell McCLANAHAN et al., Defendant–Appellant.

No. 41123/41132.

Missouri Court of Appeals, Eastern District, Division One.

Sept. 2, 1980.

Motions for Rehearing and/or Transfer to Supreme Court Denied Oct. 17, 1980.

Applications to Transfer Denied Dec. 15, 1980.

F. Douglas O'Leary, St. Louis, for plaintiff–appellant.

Daniel E. Wilke, Clayton, for defendant–appellant.

STEWART, Presiding Judge.

Darrell McClanahan, an insured of Farmers Insurance Company, Inc. (Farmers)[1] was driving a motor vehicle titled in the name of Lonzo Roberts, an insured of Subscribers at the Automobile Club Inter–Insurance Exchange (The Exchange) when he was involved in an accident. As a result of the accident, claims were made against McClanahan by Curtis Brown, as administrator of the Estate of Dennis Brown, Tammie Guccionne, Debbie Boylan, and Gary Dorris. The Exchange filed an action for declaratory judgment against the above, McClanahan and Farmers, as defendants.

---

1. Darrell had a policy on a motorcycle and his parents, with whom he resided, had a policy on their three automobiles with Farmers.

Upon the issues joined by the pleadings of the parties, the trial court in this jury waived case entered judgment declaring that the omnibus clause of the policy of The Exchange provided Mr. McClanahan with coverage for any claims arising out of the accident. The court also declared that Mr. McClanahan was afforded coverage under the "non–owned automobile" clause of the automobile policies of Farmers.

■ The appeals of The Exchange and Farmers have been consolidated for our review. In entering its judgment the trial court made findings of fact and conclusions of law. We review this case upon both the law and the evidence as in suits of an equitable nature. The judgment of the trial court will not be set aside unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares or erroneously applies the law. We defer to the trial court on matters of credibility. Rule 73.01. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1975).

■ The facts favorable to the judgment of the trial court are that Lonzo Roberts, the father of Michael Roberts, was the record title holder of a Chevrolet station wagon and a 1958 Chevrolet pick–up truck. When Michael became 16 years of age in 1976 Mr. Roberts purchased a 1966 Chevrolet Impala for Michael's general use. The Impala was titled in the name of Lonzo Roberts. All of the vehicles were covered under a policy of insurance issued to Mr. Lonzo Roberts. Michael had his own keys to the Impala and provided for the maintenance of that car. He could take that car at any time he wanted.

Michael had an accident with the Impala. The fender was pushed into the wheel and Michael was not able to repair it. We believe the trial court could have inferred from the evidence that it was not economically feasible to repair that car and it ceased to be used. Michael was employed part time at a fast food restaurant and required transportation in order to get to work. The only key to the truck was kept on the dresser in the bedroom. Michael would get the key from the dresser and use the truck to go to work. After the Impala was damaged Michael used the truck "almost exclusively." Mr. Roberts also used the truck on some occasions during that time. Mr. Roberts usually drove the station wagon. Michael testified that he was to use it for work but stated that he did not always regard what his father told him and he would use the truck without his father's permission. Mr. Roberts was aware of this for he testified that Michael would normally ask permission to use the truck but if he wanted to use the truck "during the day or do something he could get the key and go do it."

Among his friends Michael referred to the truck as his truck.[2] Darrell McClanahan conceded that in deposition he had testified that on one occasion when Darrell and Michael were going to a party Michael had the truck at work and Darrell followed him home so that they could leave the truck because Mr. Roberts did not want Michael driving it "all around some places or something like that." Michael did not tell Darrell that he was only to use the truck to go to work or that he had to obtain permission to use the truck. Darrell was of the opinion that Michael owned the truck. Michael permitted Darrell McClanahan to drive the pick–up on two or three occasions before the accident. He also let two other boys drive the truck. There is no evidence that Mr. Roberts was aware of the fact that Michael had given other boys permission to drive the truck.

On August 14, 1977 Michael drove the pick–up truck to work. Darrell, who was also an employee of the restaurant, was not working on the shift with Michael but came by the restaurant to visit. He asked for the key to the pick–up truck so that he could drive to Illinois and get some beer for himself and for Michael. Michael gave Darrell the key and Darrell left with Tammie Guccionne, Debbie Boylan and Gary Dorris as passengers in the truck. The truck was involved in an accident that was fatal to

2. Michael's testimony was "[i]t ain't mine but I said it's mine."

defendant Brown's decedent and resulted in injuries to the passengers of the truck.

There was testimony by Mr. Roberts and by Michael that when Michael had any family car he was not to let anyone else drive. They also testified that Michael was to use the truck only to go to work and return, that he was to get permission to use it for other purposes. The court in its findings of fact and conclusions stated that Mr. Roberts "acquiesced in a willingness to allow the first permittee [Michael], to authorize others to drive the vehicle." It then stated:

"By his course of conduct he is now estopped to deny this use by post–event protestations to the contrary. These 'after the fact' protests contradict his 'implied consent' conduct."

We read these statements as a finding on the part of the trial court that the testimony of Mr. Roberts and Michael, that Michael was not to permit anyone else to drive and that he was to use the truck only to get to work and return, were not credible. We defer to the findings of the trial court on these factual issues. *Hood v. Miller's Mutual Insurance Association*, 578 S.W.2d 605, 608 (Mo.App.1979).

### OMNIBUS COVERAGE OF THE EXCHANGE

We first consider whether the trial court erred in finding that Darrell McClanahan was afforded coverage under the omnibus clause of Mr. Roberts' automobile insurance policy with The Exchange.

■ The pertinent portions of that policy read as follows:

"Persons insured. The following are assureds under Part I.

(a) With respect to the owned automobile,

(1) the named assured and any residents of the same household,

(2) any other person using such automobile with the permission of the named assured provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission . . . ."

The omnibus clause such as the above has been the subject of considerable litigation. The controlling case in Missouri is *United States Fidelity & Guaranty Co. v. Safeco Insurance Co. of America*, 522 S.W.2d 809 (Mo.1975) which is cited by both parties. The factors that are determinative of the issues in this case as to whether a second permittee is covered under the usual omnibus clause are set out in that case as follows, l. c. 816:

"1. The permission must come from the named insured, not simply from the first permittee.

2. Permission of the named insured to the second permittee may be implied as well as express.

3. Permission may be proven by circumstantial evidence, but the circumstances must be such that the necessary fact may be inferred therefrom and must reasonably follow, so that the conclusion so reached is not the result of guesswork, conjecture or speculation.

4. Permission from the named insured can be found or implied from a course of conduct which evidences the willingness of the named insured to permit the first permittee to authorize others to drive, such as . . . broad and unrestricted use given by the named insured to [the second permittee]."

The crucial issue here is whether there was sufficient substantial evidence from which the trial court could have found that Lonzo Roberts had impliedly permitted Darrell McClanahan to drive the pick–up truck. There is no evidence of express permission. Permission must then appear by way of circumstantial evidence and must be implied from a course of conduct that evidences a willingness of Mr. Roberts to permit Michael to authorize others to drive.

■ In this case Michael had been given the Impala automobile with broad unrestricted use. That car was damaged in a minor accident. The fender was pushed into the wheel and it could not be repaired for a reasonable sum commensurate with the value of the car. Michael worked three or four days a week and needed transporta-

tion for that purpose. The pick–up truck was made available for Michael's use. There was testimony by Mr. Roberts and Michael that the truck was to be used by Michael only to go to work and return and that he was to obtain permission on any other occasion. As pointed out above the trial court was not required to give this testimony full credit. Michael did use the truck without permission for other purposes.

There was only one key to the truck. This key was kept on a dresser in the bedroom and was always available to Michael when the truck was not being used by his father. Michael paid for the gasoline for the truck. Mr. Roberts made almost no use of the truck. Mr. Roberts testified that in spite of his restrictions on use of the truck "if [Michael] wanted to use it during the day or do something, he could get the key and go and do it." Mr. Roberts admitted that on at least one occasion he was aware of the extended use of the truck. Mr. Roberts did not take any action to restrict the use of the truck after that occasion. The key was still kept in the same place and available to Michael.

Mr. Roberts was also aware that Michael was using the truck by reason of yet another incident. The truck had a stick shift. Mr. Roberts had not taught him to use the stick shift. Michael had taken the truck on several occasions and had friends teach him. Mr. Roberts became aware of this when he saw Michael drive away from the house prior to the time the Impala was damaged.

Michael testified that he would put the key back when he wasn't using the truck not because he was told to but because someone else might want to use it. Defendant Darrell McClanahan, who was called as a witness by The Exchange, when asked about the extent of the use of the truck by Michael testified.

"Like if he was going someplace he'd drive the truck whether it was nothing or what have you. He'd use it after work, before work,—mainly, he always had a truck."

Although Darrell testified that Michael was required to return the truck after work on one occasion, he was not aware of any restrictions placed upon Michael's use of the truck.

We also note that the pick–up truck was referred to by Michael and other witnesses as Michael's truck.

We find that there was sufficient substantial evidence from which the trial court sitting as the trier of the facts could find that the named insured had in fact given Michael such broad and unrestricted use of the pick–up truck as to amount to implied permission for Michael to authorize others to drive the pick–up truck. *United States Fidelity & Guaranty Co. v. Safeco Insurance Co. of America, supra.*

The Exchange relies heavily upon *Helmkamp v. American Family Mut. Ins. Co.,* 407 S.W.2d 559 (Mo.App.1966). The evidence in that case is similar to that in this case. The principal distinction is that the trial court in that case found the factual issues in accordance with the insurance carrier's contention. The Exchange also refers us to *Government Employees Insurance v. Lammert,* 483 S.W.2d 652 (Mo.App.1972). *Lammert* antedated *Murphy v. Carron, supra.* It is apparent that a *de novo* standard of review was used by this court in *Lammert.* This is no longer an appropriate standard of review. *Murphy v. Carron, supra.*

There was sufficient evidence for the trial court to have reached a different result but that court had the opportunity to observe the witness and to weigh the evidence. We must defer to its findings. *State Farm Mutual Automobile Insurance Co. v. St. Louis County, et al.,* 601 S.W.2d 291 (Mo.App.Eastern District, 1980). The judgment as to The Exchange is affirmed.

## NON–OWNED AUTOMOBILE COVERAGE OF FARMERS

The applicable provision of Farmers' policy reads as follows:

"(b) [W]ith respect to a non–owned automobile,

(1) the named insured or a relative, and

(2) any other person or organization not owning or hiring such automobile if legally responsible for its use by the named insured or a relative, but only in the event such named insured or relative is legally liable for the occurrence, provided the actual use of the non—owned automobile by the persons in (1) and (2) above is with the permission of the owner."

The issue with respect to Farmers' coverage is whether Darrell was actually using the pick—up truck with "the permission of the owner." The word "owner" is not defined in the policy. This restrictive clause contrasts with the omnibus clause in the policies in that the latter requires the permission of the "named insured." The Supreme Court in *Safeco* recognizes that the word "owner" had broad and varied meaning. The court in that case traced the history of this policy restriction concluding that it was placed in the policy so that the insurer "would not be liable for injuries caused by persons driving stolen automobiles." It cites with approval Black's New Dictionary's (Rev. 4th ed.) comment that the word "Owner is not infrequently used to describe one who has dominion or control over a thing, the title to which is in another." *Safeco* at 817, 818. Darrell and Darrell's parents with whom he resided purchased their policies of insurance with the expectation that they would have coverage while lawfully using a non—owned vehicle. In this case Michael Roberts referred to the pick—up truck as his; Darrell was of the opinion that Michael owned the truck; Michael had dominion and control over the vehicle when he gave Darrell permission to use it. There was sufficient evidence to support the trial court's conclusion that Darrell was using the pick—up truck with the permission of the "owner" within the meaning of Farmers' policy.

Even if the policy could be read so as to require the permission of Mr. Roberts, the record title holder, what we have said above with respect to the coverage of The Exchange would be applicable to the issue here and the trial court would have been justified in finding that Darrell had the implied permission of Mr. Roberts to use the pick—up truck.

The judgment of the trial court is affirmed.

SNYDER and SIMON, JJ., concur.