Jerry KRAMBECK, Guardian Ad Litem for the Estate of Jacob L. Kiley, a Minor, Plaintiff and Appellant,

v.

SUNSHINE INSURANCE COMPANY, a South Dakota corporation, Defendant and Appellee.

No. 18189.

Supreme Court of South Dakota.

Considered on Briefs May 25, 1993.

Decided Sept. 8, 1993.

Randall L. Macy of Buckmaster and Macy, Belle Fourche, for plaintiff and appellant.

Scott T. Beal of Beal Law Offices, Rapid City, for defendant and appellee.

HENDERSON, Justice.

*PROCEDURAL HISTORY/ISSUES*

After a motor vehicle accident injured five-year-old Jacob Kiley, his guardian ad litem, Jerry Krambeck, sought a declaratory judgment decreeing that Sunshine Insurance Company (Sunshine) has a duty to provide coverage pursuant to the underinsured motor vehicle (UMV) benefits provided for in the Kiley family's policy with Sunshine. Prior to hearing, both Krambeck and Sunshine moved for summary judgment. In a November 23, 1992 Order, the trial court granted Sunshine's motion. Krambeck filed Notice of Appeal on December 23, 1992 raising the following issues:

I. Did the trial court err in determining that Sunshine's Endorsement 12–86 replaced only the first paragraph of the definition of "underinsured motor vehicle?"

II. Did the trial court err in failing to determine if Endorsement 12–86 created an ambiguity in the Kiley insurance contract that should have been construed in favor of Krambeck?

We affirm the trial court.

## FACTS

On September 19, 1991, Jacob was playing in the back of his father's pickup while father was doing mechanical work on it. However, father unfortunately failed to block the tires and left the transmission in neutral. Somehow, the vehicle's parking brake disengaged, and the truck rolled down a hill, throwing the child from the vehicle. Jacob survived, but his multiple injuries have resulted in over $90,000 in medical bills thus far, and he will incur additional medical expenses to cover future cosmetic surgeries.

Under his parents' policy with Sunshine, the truck carried a $100,000 per person per accident liability coverage and underinsured motorist coverage of $100,000 per person. Where the policy limits exceed the statutory minimum, the insurer's liability is limited to the coverage by statute. *Cimarron Ins. Co. v. Croyle*, 479 N.W.2d 881 (S.D.1992). Due to the family exclusion provision in the policy, Krambeck and Sunshine agreed that Jacob was to recover $25,000, the amount required by SDCL 32–35–70. Both parties agree the issue of liability proceeds is settled and is not a subject of this action. However, Krambeck further sought a declaratory judgment to force Sunshine to provide coverage pursuant to the UMV benefits provided for in the Kiley family's policy. Instead, the trial court granted summary judgment to Sunshine. This appeal followed.

* In its Memorandum Opinion, the trial court refers to the Kiley policy as endorsement 6–80. Krambeck claims that the proper policy is 08–86. The only difference between the two documents

## DECISION

I. *Summary judgment was proper.*

■ Krambeck asks this Court to determine if the trial court erred in declaring that Sunshine's policy 12–86 definition of UMV replaced only the first paragraph of the original definition of UMV. Summary judgment is affirmed when there are no issues of material fact and the legal questions have been correctly decided. *Trapp v. Madera Pacific, Inc.*, 390 N.W.2d 558 (S.D.1986). As Krambeck does not dispute any issue of fact, we are left to interpret the contract as a matter of law. *Enchanted World Doll Museum v. Buskohl*, 398 N.W.2d 149 (S.D.1986).

According to policy 08–86 *, section A, Sunshine agreed to pay damages which "an 'insured' is entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of bodily injury." Section B states that "insured" includes "You or any 'family member.'" However, section C of 08–86, after providing a definition of UMV, additionally lists those types of vehicles not covered. It reads specifically as follows:

"Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage. However, "underinsured motor vehicle" does not include any vehicle or equipment

1. To which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

2. Owned by or furnished or available for the regular use of you or any "family member."

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

in the sections relevant to this appeal is that 6–80 uses the term "covered person," while 08–86 uses the synonym "insured."

5. Designed mainly for use off public roads while not upon public roads.

6. While located for use as a residence or premises.

7. Owned or operated by a person qualifying as a self-insurer under any applicable motor vehicle law.

8. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company

   a. denies coverage; or

   b. is or becomes insolvent.

Subsequent to receiving policy 08–86, the Kileys received through the mail a document entitled "Amendment of Policy Provisions— South Dakota" (policy 12–86). This paper contained a list of provisions that were being unilaterally amended or replaced by Sunshine. Among the changes listed in 12–86 was a section stating:

> The definition of "Underinsured motor vehicle" is replaced by the following:
>
>> "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the insured is legally entitled to recover as damages.

Krambeck contends that this definition "replaced" not only the definition in policy 08–86, but deleted the eight paragraphs in the original endorsement concerning excluded vehicles as well. In other words, Krambeck asserts that the list of exclusions was part of the 08–86 definition, and because the 12–86 language does not contain those exclusions, Sunshine must have intended family vehicles (as well as trains) to be covered.

The trial court ruled that the replaced paragraph relates to the definition of the words "underinsured motor vehicle." Thus, it cannot be construed to eliminate the eight provisions which relate to what UMV does not mean. We agree with this rationale. It plainly appears that the definition in 12–86 was meant to replace only the one paragraph in Kiley's original coverage. Thus, the trial court did not err in so determining.

■ Additionally, Krambeck alleges that because the changes were not negotiated, the contract is an adhesion contract. Ironically, it is those very forced changes which Krambeck uses to claim that family owned vehicles are now covered as UMVs. If we were to eliminate the "non-negotiated" terms of the policy, Krambeck would have no basis for a claim whatsoever under this theory. More importantly, according to the record, this issue was not raised at the trial court. We will not address it first here. *Weaver v. Boortz,* 301 N.W.2d 673 (S.D.1981). Summary judgment was proper.

II. *Contract was not ambiguous.*

■ Krambeck maintains that the trial court erred by failing to determine if 12–86 created an ambiguity in the Kiley contract. The presence of ambiguity in a contract is a question of law for this Court. *North River Ins. Co. v. Golden Rule Const.,* 296 N.W.2d 910, 913 (S.D.1980). When reviewing a contract, we make our own determination as to interpretation of an ambiguity without any presumption in favor of the trial court. *Teigen Const. v. Pavement Specialists, Inc.,* 267 N.W.2d 574 (S.D.1978). The ambiguity alleged is the same interpretation as noted in the first issue. Per the analysis above, we do not find the contract to be ambiguous.

We regret that this boy suffered injuries as a result of this accident. Our legal duty is clear. We cannot affix a contract obligation where it does not exist.

Affirmed.

MILLER, C.J., and WUEST, SABERS and AMUNDSON, JJ., concur.