STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, APPELLANT, V. D.F. LANOHA LANDSCAPE NURSERY, INC., ET AL., APPELLEES.

553 N.W.2d 736

Filed October 11, 1996.   No. S-94-330.

Joseph E. Jones and James A. Mullen, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellant.

Terry K. Gutierrez, of Schmid, Mooney & Frederick, P.C., for appellee Roger R. Yager.

J. Joseph McQuillan and Jon J. Puk, of Walentine, O'Toole, McQuillan & Gordon, for appellees Paul B. Chatterton and Farmers Union Cooperative Insurance Company.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

GERRARD, J.

On May 12, 1991, Isidro Luna Martinez, an employee of D.F. Lanoha Landscape Nursery, Inc. (Lanoha Nursery), was driving a van owned by Lanoha Nursery on U.S. Highway 6 in Douglas County. The van crossed the centerline and collided with two vehicles, an automobile driven by Roger R. Yager and a van driven by Paul B. Chatterton. Yager sued Lanoha Nursery for injuries sustained and loss incurred as a result of the collision.

Lanoha Nursery's insurer, State Farm Mutual Automobile Insurance Company (State Farm), brought a declaratory judgment action to determine coverage with respect to its insured. State Farm asserts that at the time of the accident, Martinez was operating Lanoha Nursery's vehicle without its knowledge and without its express or implied consent. In separate motions, Yager, David F. Lanoha (Lanoha) and Lanoha Nursery, and Farmers Union Cooperative Insurance Co. (Farmers Union) and its insured Chatterton moved the district court for summary judgment against State Farm. State Farm filed a cross-motion for summary judgment.

At the hearing on State Farm's motion, Farmers Union and Chatterton withdrew their motion for summary judgment, and it was agreed that an order would be entered overruling Lanoha Nursery and Lanoha's motion. The district court granted Yager's motion for summary judgment and overruled State Farm's motion for summary judgment, finding that the initial permission rule made Martinez an additional insured

within the meaning of Lanoha Nursery's automobile insurance coverage. It is from this order that State Farm appeals.

Finding genuine issues of material fact to be in controversy, we affirm the district court's denial of State Farm's motion for summary judgment, but reverse the district court's granting of Yager's motion for summary judgment, and remand the matter for further proceedings.

## FACTUAL BACKGROUND

In the spring of 1991, Lanoha Nursery's owner, Lanoha, and Jeff Svik, the nursery's production manager, hired eight migrant farm laborers. As a part of their compensation, these laborers were furnished housing in a trailer park located 3 to 4 miles from the nursery. In April 1991, Lanoha and Svik decided to provide transportation for the laborers living in the trailer park as a benefit to these employees and to make certain that they would arrive at work on time.

Toward this end, Lanoha Nursery provided the workers with a van titled, licensed, and insured in Lanoha Nursery's name. In addition, Lanoha Nursery paid all associated expenses on the van such as gasoline and maintenance. Lanoha and Svik testified that they selected one of the laborers, Francisco Calderon, as the only person authorized to drive the van. Calderon was chosen because he was older and more mature than the rest of the laborers and because Calderon was the only one of the laborers who could speak English and possessed a valid Nebraska driver's license. Lanoha and Svik testified that, as per their request and while they were present, Calderon instructed all the other laborers in their native language that Calderon was the only person authorized to drive the van. Calderon was permitted to operate the van to transport the laborers to and from the nursery. Lanoha and Svik also testified that Calderon was allowed to use the van to transport the laborers for personal reasons such as to go to the Laundromat and to purchase groceries.

Svik testified that he talked to Calderon and the other laborers on a weekly basis, reminding them that only Calderon was permitted to drive the van. Both Lanoha and Svik claimed that they were unaware of any instance prior to the accident

where a laborer other than Calderon drove the van. Two of the laborers, Manuel Garcia Sanchez and Jorge Gomez, testified that through Calderon, Lanoha and Svik instructed the entire group that only Calderon was allowed to drive the van. Furthermore, both testified that prior to the accident, they had no knowledge of a laborer other than Calderon driving the van for any purpose.

Martinez, however, paints a different picture. Martinez testified that the laborers were instructed that they could not drive any of the other nursery vehicles except for the van and that he had driven the van on at least three occasions prior to the accident. Although he was aware the van had been entrusted to Calderon, Martinez said he and the other laborers were permitted to take the van at any time in order to go to the store. Martinez said Calderon knew other laborers drove the van on occasion and did nothing to stop the practice. According to Martinez, Calderon would merely tell the individual using the van to be careful when he drove it. Furthermore, Martinez claimed that neither Lanoha nor Svik expressly prohibited the other laborers from driving the van, except that Lanoha told the group they could not use the van to drive to a bar.

Another laborer confirmed much of Martinez' testimony. Gregorio Luis Perez testified that Calderon was in charge of the van; however, many other laborers, including Perez, were either expressly or implicitly allowed to drive the van. In particular, a laborer named "Sergio" would drive the field crew to the nursery and back for work whenever Calderon did not. Furthermore, Sergio would frequently drive the van on Sunday, the laborers' only day off, when they would go to the Laundromat, shop for clothing or food, or drive to rent videotapes. Perez testified that laborers named "Ricardo," "Manuel," and "Jorge" also drove the van at various times. Perez stated that when he drove the van, Calderon gave his express permission for its use. However, he was unsure whether Calderon gave express permission to the others. Perez said Calderon would leave the keys to the van so that anyone could just take the van whenever he pleased.

On Sunday, May 12, 1991, after spending much of the day drinking beer and tequila with some of the other laborers, including Calderon, Martinez decided to drive to the store and buy more beer. Martinez testified that he did not ask Calderon if he could take the van. In fact, Martinez said that at this time Calderon was asleep. Martinez said the keys had been left in the van by another laborer who had driven the van earlier in the day. Instead of going directly to the store, Martinez decided to go to a bar first, where Martinez testified he drank half of one beer. On his way back to the trailer, Martinez crossed the centerline of Highway 6 and collided with a car driven by Yager and a van driven by Chatterton.

## SCOPE OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Boyd v. Chakraborty, ante* p. 575, 550 N.W.2d 44 (1996); *Harrison v. Seagroves, ante* p. 495, 549 N.W.2d 644 (1996).

## ASSIGNMENTS OF ERROR

State Farm assigns that the district court erred in overruling its motion for summary judgment and in granting Yager's competing motion for summary judgment.

## ANALYSIS

The State Farm policy covering Lanoha Nursery's van contained an omnibus clause which, in pertinent part, defined an insured as "any other *person* while using such a *car* if its use is within the scope of consent of *you* or *your spouse* . . . ." (Emphasis in original.) For many years, this court in construing an omnibus clause has adhered to the so-called liberal or initial permission rule. See *Arndt v. Davis*, 183 Neb. 726, 163 N.W.2d 886 (1969). We recently reaffirmed our commitment to this rule in *Barry v. Tanner, ante* p. 116, 547 N.W.2d 730 (1996). Colorfully put, the initial permission rule provides:

"[I]f the vehicle was originally entrusted by the named insured, or one having proper authority to give permission, to the person operating it at the time of the accident, then despite hell or high water, such operation is considered to be within the scope of the permission granted, regardless of how grossly the terms of the original bailment may have been violated." 7 Appleman, Insurance Law and Practice, § 4366, p. 308.

*Hull v. Allstate Ins. Co.*, 187 Neb. 130, 132, 187 N.W.2d 650, 651 (1971).

Justification for the initial permission rule is based on the theory that

the purpose of the omnibus clause is to broaden the coverage of the policy to cover *all persons operating the insured automobile with the knowledge and consent of the insured owner* and insist that *once the owner has placed the automobile in the possession of the driver and consented to his operating the automobile,* any deviation from the purposes for which the automobile was entrusted to the operator is immaterial.

(Emphasis supplied.) *Arndt v. Davis,* 183 Neb. at 729, 163 N.W.2d at 888. Thus, although the initial permission rule is a liberal construction, it is still necessary that an owner must entrust possession of his or her automobile to a driver in order for that driver to be within the meaning of an other insured for the purposes of an omnibus clause.

However, the consent of an insured owner may be express or implied. "Such motor vehicle liability policy: . . . (2) shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the *express or implied permission of such named insured . . . .*" (Emphasis supplied.) Neb. Rev. Stat. § 60-534 (Reissue 1993).

" 'Thus permission is not limited to that expressly granted, but may arise and be implied from a course of conduct pursued with knowledge of the facts for a considerable time, as where there is a prolonged, frequent, and habitual use with the knowledge and acquiescence of

the owner, which must be regarded as a "permission" within the policy. . . .' "

*MFA Ins. Companies v. Mendenhall*, 205 Neb. 430, 437, 288 N.W.2d 270, 274 (1980) (quoting *State Farm Mutual Automobile Ins. Co. v. Kersey*, 171 Neb. 212, 106 N.W.2d 31 (1960)).

One further nuance of the initial permission rule which must be addressed is the application of the rule to a second permittee, also known as a permittee's permittee. Heretofore, the factual contexts in which we have decided whether a second permittee is an additional insured within the meaning of an omnibus clause have not addressed whether the rule in this regard is as broad as the initial permission rule itself.

In *Protective Fire & Cas. Co. v. Cornelius*, 176 Neb. 75, 125 N.W.2d 179 (1963), we held that a second permittee, operating an automobile while the initial permittee was a passenger in that automobile, was an additional insured for the purposes of the omnibus statute, § 60-534. However, our decision was based on the notion that the omnibus statute specifically referred to *use* of a motor vehicle, not the *operation* of one. We concluded that an initial permittee riding in an automobile as a passenger, although not operating the vehicle, was nonetheless still using the automobile for the purposes of the omnibus statute.

In *Farm Bureau Ins. Co. v. Allied Mut. Ins. Co.*, 180 Neb. 555, 143 N.W.2d 923 (1966), we held that a grant of unrestricted use by the owner of an automobile to an initial permittee allows the initial permittee to treat the automobile as his own, and, obviously, an owner has an absolute right to loan his automobile to another. Thus, an unqualified use granted to an initial permittee implied consent for the initial permittee to grant use to a second permittee.

We have not considered the initial permission rule with respect to a second permittee in the factual context presented in the instant case—that is, where the initial permittee is not a passenger in the automobile and the owner of the vehicle attempted to limit the scope of the initial permittee's use to preclude use by a second permittee. Instructive are those deci-

sions from other jurisdictions that, like Nebraska, are committed to the initial permission rule.

In *Odolecki v. Hartford Accident & Indemnity Co.*, 55 N.J. 542, 264 A.2d 38 (1970), the owner of the insured vehicle had given general permission to her son to use her automobile. However, she had also instructed her son on several occasions not to let anyone else drive the car. Her son allowed his friend to borrow the car to pick up the friend's girl friend. On his way to the hospital where the girl friend worked, the second permittee was involved in an accident. The New Jersey Supreme Court overruled its prior rule and held the second permittee to be an additional insured for the purposes of the omnibus clause at issue. Unable to reconcile its former rule concerning second permittees with the initial permission rule, the court stated:

> We fail, however, to see the distinction between a case where a first permittee exceeds the scope of permission in terms of time, place, or purpose, and a case where he exceeds the scope of permission in terms of use of the vehicle by another. Once an owner voluntarily hands over the keys to his car, the extent of permission he actually grants is as irrelevant in the one case as in the other. . . . We think that once the initial permission has been given by the named insured[,] coverage is fixed, barring theft or the like.

*Id.* at 549-50, 264 A.2d at 42.

In *Maryland Cas. Co. v. Iowa Nat. Mut. Ins.*, 54 Ill. 2d 333, 297 N.E.2d 163 (1973), the Supreme Court of Illinois quoted extensively from *Odolecki* and concluded that consistent with the public policy underlying the initial permission rule, once initial permission is given by the named insured, a further grant of permission to a second permittee brings the second permittee within the applicable omnibus clause as an additional insured—that is, barring theft or the like.

We are likewise persuaded by the reasoning of the New Jersey Supreme Court in *Odolecki*. Therefore, in keeping with those public policy considerations which underlie the initial permission rule, we hold that once the named insured of a policy which contains an omnibus clause that extends liability

coverage to those driving the covered automobile with the insured's consent gives such consent to another, any third person allowed to drive the vehicle by the initial permittee likewise is covered, except in cases of theft or conversion.

With the foregoing in mind, we conclude that a grant of summary judgment to either party was error under the facts of the instant case. In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Harrison v. Seagroves, ante* p. 495, 549 N.W.2d 644 (1996); *Continental Mortgage v. Johnson, ante* p. 484, 549 N.W.2d 640 (1996). The issue in this case is whether Martinez was a second permittee within the meaning of the rule announced herein, or whether the second permittee rule is inapplicable because the *driver*, Martinez, had been denied permission to operate the vehicle directly by the named insured.

When the evidence is viewed in a light most favorable to State Farm, the court would be compelled to conclude that Lanoha and Svik never gave permission, express or implied, to anyone other than Calderon to drive the van. More specifically, Lanoha and Svik testified that they expressly told Martinez, as well as the other laborers, that they were prohibited from driving the van. The second permittee rule is obviously inapplicable in a case in which the named insured communicates directly with a driver and specifically *prohibits* the operation of the insured vehicle by *that driver*. Thus, when the evidence is viewed in a light most favorable to State Farm, there is not even a possibility of second permittee liability, because the named insured communicated directly with Martinez and specifically denied Martinez permission to use the vehicle for *any* purpose.

On the other hand, when the evidence is viewed in a light most favorable to Yager, the court could conclude, based upon Martinez' testimony, that Lanoha gave his express permission for the laborers to use the van, but not to use the other nursery vehicles. Alternatively, the court could find that Calderon, as the initial permittee, gave either express or implied permis-

sion for Martinez, as well as the other laborers, to use the van through a course of conduct pursued with knowledge of the van's use by the laborers for a considerable time period. Thus, the court could find Martinez to be a second permittee within the rule announced herein, if it accepts Martinez' and Perez' testimony that the named insured never directly prohibited Martinez and the other laborers from driving the van.

On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Boyd v. Chakraborty, ante* p. 575, 550 N.W.2d 44 (1996); *Harrison v. Seagroves, supra*. Obviously, the determination of whether Martinez is a second permittee or a driver who was directly denied permission to use the van by the named insured depends on which witnesses' testimony is believed by the finder of fact. The foregoing questions of fact are not properly decided in the context of a motion for summary judgment. Therefore, we conclude that the district court was correct in overruling State Farm's motion for summary judgment, but erred when it granted summary judgment in favor of Yager.

## CONCLUSION

Finding genuine issues of material fact to be present, we reverse the order of the district court granting summary judgment in favor of Yager, and remand the cause to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.