1997 SD 123

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff and Appellee,**

v.

**Randy D. RAGATZ, Jeffrey S. Bumpous and Deborah A. Pfeifle, Defendants,**

**and**

**Farm & City Insurance Company, Defendant and Appellant.**

No. 19964.

Supreme Court of South Dakota.

Considered on Briefs Sept. 9, 1997.

Decided Oct. 29, 1997.

Roy A. Wise of Richardson, Roseclose, Wyly, Wise & Sauck, Aberdeen, for plaintiff and appellee.

Ronald A. Wager of Bantz, Gosch, Cremer, Peterson & Sommers, Aberdeen, for defendant and appellant.

GILBERTSON, Justice.

[¶ 1.] Farm & City Insurance Co. (Farm & City) appeals the trial court's grant of summary judgment to State Farm Mutual Automobile Insurance Co. (State Farm) and denial of summary judgment to Farm & City. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] At the time this controversy arose, David McGaugh (David) had an automobile insurance policy issued by State Farm which covered his 1976 Chevrolet pickup. In mid-December, 1994, David gave permission to his adult son, Carl McGaugh (Carl), to use the pickup because Carl's vehicle had broken down. A few days later, David's pickup was involved in an accident. At the time of the accident, the pickup was being driven by Randy Ragatz (Ragatz), Carl's roommate. Carl was not present in the vehicle at the time of the accident, but had given Ragatz permission to drive the vehicle to Groton, South Dakota to retrieve a bed from the home of Ragatz's parents. Also present in the vehicle with Ragatz, at the time of the accident, were Jeffrey Bumpous and Deborah Pfeifle, also roommates of Carl and Ragatz. Bumpous and Pfeifle brought suit against Ragatz for injuries they sustained as a result of the accident.

[¶ 3.] Ever since Carl was old enough to drive, Carl had been instructed by David not to let anyone else drive David's vehicle. While David did allow Carl to use the pickup in mid-December, 1994, it is undisputed that David never gave Carl permission to let Ragatz use the pickup and neither Carl nor Ragatz requested such permission. Although David did not specifically instruct Carl not to let anyone else drive the pickup when Carl borrowed the pickup that December, Carl testified that these admonitions continued to apply as he advanced in years and that he broke David's rule by loaning David's pickup to Ragatz.

[¶ 4.] Carl was insured under a policy issued by Farm & City. David's insurer, State Farm, filed suit seeking a declaratory judgment that Farm & City was responsible for providing insurance coverage for the accident. State Farm's subsequent motion for summary judgment was granted. Farm & City's cross-motion for summary judgment was denied.

[¶ 5.] The following issues are present:
1. Whether the omnibus provision of the State Farm Policy and SDCL 32–35–70 require State Farm to provide liability coverage to Ragatz as a permissive user of the owner's vehicle?
2. Whether the grant of summary judgment in favor of State Farm was proper?

## ANALYSIS AND DECISION

[¶ 6.] **1. Whether the omnibus provision of the State Farm policy and SDCL 32–35–70 require State Farm to provide liability coverage to Ragatz as a permissive user of the owner's vehicle?**

[¶ 7.] Construction of an insurance contract is a question of law, reviewable de novo.

*State Farm Mut. Auto. Ins. Co. v. Vostad,* 520 N.W.2d 273, 275 (S.D.1994). Likewise, construction of a statute is a question of law. *In re Estate of Chilton,* 520 N.W.2d 910, 912 (S.D.1994).

[¶ 8.] Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Krambeck v. Sunshine Ins.,* 505 N.W.2d 131, 132 (S.D.1993); *Garrett v. BankWest, Inc.,* 459 N.W.2d 833, 837 (S.D. 1990). Summary judgment will be affirmed if there exists any basis which would support the trial court's ruling. *King v. John Hancock Mut. Life Ins. Co.,* 500 N.W.2d 619, 621 (S.D.1993).

[¶ 9.] South Dakota's financial responsibility law, SDCL 32–35–113(1) permits motor vehicle owners to demonstrate financial responsibility by "[h]aving in force on the motor vehicle an owner's policy of liability insurance as provided in SDCL 32–35–70."

[¶ 10.] SDCL 32–35–70 provides in part:

An owner's policy of liability insurance referred to in § 32–35–68 shall insure the person named therein *and any other person as insured, using any insured vehicle or vehicles with the express or implied permission of the named insured,* against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of the vehicle or vehicles within the United States. . . .

(Emphasis added).

[¶ 11.] In accordance with SDCL 32–35–70, the State Farm policy at issue contained the following provision under § 4, sometimes referred to as the omnibus clause.

When we refer to your car ... insured means:

1. you;

2. your spouse;

3. the relatives of the first person named in the declarations;

4. *any other person while using such a car if its use is within the scope of consent of you or your spouse;* and

5. any other person or organization liable for the use of such a car by one of the above insureds.

(Emphasis added).

[¶ 12.] In order to find coverage in favor of Ragatz under the State Farm policy, Farm & City was required to demonstrate that there was either express or implied permission from the insured to Ragatz. SDCL 32–35–70.

[¶ 13.] The facts are uncontested that Ragatz did not receive express permission from the insured, David, to use the pickup. At issue then is whether there was a genuine issue of material fact for the trial court of implied consent flowing from David to Ragatz. The trial court answered in the negative. We agree.

[¶ 14.] In mid-December 1994 Carl's own vehicle became inoperable. Carl asked for and received permission from his father, David, to use his pickup. Neither Carl nor Ragatz asked for permission for Ragatz to operate the pickup. In fact, David had repeatedly told his son not to let others drive his vehicle. This restrictive admonition began when Carl was 14 and continued for several years. Farm & City appears to contend that since David did not specifically repeat this prohibition against third-party use at the very moment he gave Carl permission to use the vehicle in December 1994, somehow David had waived the restriction and impliedly permitted Ragatz to use the vehicle.

[¶ 15.] This Court has had previous occasion to consider the question of when a permittee is deemed to have the implied permission of the owner under an insurance policy's omnibus provision. *Western Cas. & Sur. Co. v. Anderson,* 273 N.W.2d 203 (S.D.1979). The *Western* Court recognized the "wide variation"[1] among the states in defining the

---

1. There is also a split of authority among jurisdictions with regard to whether, absent notice to the contrary, a second permittee has implied authority to use a vehicle when the first permittee has been given instructions *not to permit* third-party use. Some courts hold that a second permittee is an omnibus insured based upon implied permission, even when the first permittee was instructed not to let anyone else use the named insured's vehicle. *See Allstate Ins. Co. v. Lyons,* 400 A.2d 349 (Me.1979); *State Farm Mut. Auto. Ins. Co. v. Lanoha,* 553 N.W.2d 736, 250

scope of implied permission and decided against the more expansive classifications in favor of a more tempered reading of SDCL 32–35–70:

> [I]mplied consent will not arise without a showing of course of conduct or practice known to the owner and acquiesced in by him that would lead to an implication of permission for a particular venture.

273 N.W.2d at 205 (citing *National Farmers Union Property & Cas. Co. v. Ronholm,* 153 N.W.2d 322 (N.D.1967) (failure by the owner to object to the use would not be deemed consent)).

[¶ 16.] The United States District Court for the District of South Dakota in *American Family Insurance Group v. Howe,* 584 F.Supp. 369, 372 (D.S.D.1984), sought to refine the test set forth by us in *Western* by stating that implied permission arises upon consideration of the following factors: (1) the past and present conduct of the insured; (2) the relationship between the driver and the insured; and, (3) the usage and practice of the parties over an extended period of time prior to the use in question.[2] These factors are appropriate as they are consistent with our totality of the circumstances analysis in *Western.* Furthermore, the district court properly placed the burden of proof upon the party attempting to show the driver had implied permission since the driver of the vehicle was a stranger to the policy. *Id.*

[¶ 17.] Application of the *Western* and *American Family* analysis support the trial court's grant of summary judgment. In the instant case, the past and present conduct of the insured reflect a long-standing prohibition against third-party use of his vehicle. There is no evidence of a course of conduct between the insured and Ragatz that would lead to an implication that David had given Ragatz permission to use David's pickup. There was no actual relationship between David and Ragatz. At the time of the accident, David had known Ragatz for less than one week. David had no knowledge that his son permitted third parties to use his own vehicle, so David cannot be said to have acquiesced in this respect.

[¶ 18.] Thus, it is necessary to determine the effect of Carl's disobedience.

> If the owner of the car expressly forbids the permittee to lend his car to another, but the permittee nevertheless allows a second permittee to drive the car in violation of the named insured's express orders, the insurer is not liable while the second permittee is driving, on the theory that a prohibition against delegation is a restriction upon the use of the vehicle. [Thus, the second permittee] is not an omnibus insured.

12 *Couch on Insurance* 2d (Rev.Ed.)

Neb. 901 (1996); *United Services Auto. Ass'n v. National Farmers Union Property & Cas.,* 119 N.M. 397, 891 P.2d 538 (1995); *Metropolitan Property & Liab. Ins. Co. v. Acord,* 195 W.Va. 444, 465 S.E.2d 901 (1995) (implying that coverage would exist).

Other courts take the view that a second permittee does not have implied authority when the named insured expressly directs the first permittee not to let third persons drive the vehicle. *See Shelter Mut. Ins. Co. v. LittleJim,* 927 F.2d 1132 (10th Cir.1991) (applying Oklahoma law); *Gillen v. Globe Indem. Co.,* 377 F.2d 328 (8th Cir.1967) (applying Arkansas law); *Royal Indem. Co. v. Clingan,* 364 F.2d 154 (6th Cir.1966) (applying Tennessee law); *Concord Gen. Mut. Ins. Co. v. Hills,* 345 F.Supp. 1090 (D.C.Me.1972) (applying Maine law); *AIG Hawaii Ins. Co. Inc. v. Vicente,* 78 Hawai'i 249, 891 P.2d 1041 (1995); *State Farm Mut. Auto. Ins. Co. v. Gonterman,* 637 N.E.2d 811 (Ind.Ct.App.1994); *Schneberger v. Glenn,* 176 N.W.2d 782 (Iowa 1970); *Gangel v.*

*Benson,* 215 Kan. 118, 523 P.2d 330 (1974); *Malmay v. Sizemore,* 493 So.2d 620 (La.1986); *Bond v. Pennsylvania Nat. Mut. Cas. Ins. Co.,* 289 Md. 379, 424 A.2d 765 (1981); *State Farm Fire & Cas. Co. v. Ricks,* 902 S.W.2d 323 (Mo.Ct.App. 1995); *Security Mut. Cas. Co. v. Hoff,* 54 Ohio St.2d 426, 377 N.E.2d 509 (1978); *Colonial Ins. Co. v. Allstate Ins. Co.,* 90 Or.App. 564, 752 P.2d 1290 (1988); *Federal Kemper Ins. Co. v. Neary,* 366 Pa.Super. 135, 530 A.2d 929 (1987); *Keeler v. Allstate Ins. Co.,* 261 S.C. 151, 198 S.E.2d 793 (1973); *Norman v. King,* 163 Vt. 612, 659 A.2d 1123 (1995).

**2.** *See also State Farm Mut. Auto. Ins. Co. v. Kersey,* 171 Neb. 212, 106 N.W.2d 31 (1960), *overruled on other grounds, Arndt v. Davis,* 183 Neb. 726, 163 N.W.2d 886 (1969); *Andrews v. Commercial Cas. Ins. Co.,* 128 Neb. 496, 259 N.W. 653 (1935); *Ronholm,* 153 N.W.2d 322, 12 *Couch on Insurance* 2d (Rev. Ed.) § 45:352, at 696–99 (1981).

§ 45:410, at 778 (1981).[3]

[¶ 19.] Essentially, three different views have been expressed with regard to the scope of omnibus clauses where actual permission has been exceeded: (1) the strict or conversion rule; (2) the minor deviation rule; and (3) the liberal or initial permission rule. According to the "conversion rule" once initial permission is given by the owner of a vehicle to a permittee, the permittee must conform to the time, place and uses specified or intended by the parties as of the time of granting such permission. *Couch on Insurance* § 45.465, at 847. Under the strict "conversion rule" the slightest deviation from the time, place and use restrictions will preclude coverage under the omnibus clause. *Id.*

[¶ 20.] At the other end of the spectrum is the "initial permission" or liberal rule urged upon this Court by Farm & City. Some authorities refer to this rule as the "hell or high water" rule, because once permission to use a vehicle is given in the first instance, any subsequent deviation is wholly immaterial and will not defeat coverage under an omnibus clause. *United States Fidelity & Guar. Co. v. Millers Mut. Fire Ins. Co.,* 396 F.2d 569, 572 (8th Cir.1968) (applying Illinois law; *Konrad v. Hartford Accident & Indem. Co.,* 11 Ill.App.2d 503, 137 N.E.2d 855 (1956)); *Couch on Insurance* § 45.469, at 852.

[¶ 21.] Farm & City contends that South Dakota's financial responsibility law, SDCL 32–35–113, is a strong public policy

reason to accept the "initial permission" rule. Our financial responsibility law creates a "strong public policy favoring monetary protection and compensation for the benefit of those injured through the negligent operation of a vehicle." *Cimarron Ins. Co. v. Croyle,* 479 N.W.2d 881, 884 (S.D.1992). However, this strong public policy is controlled by statute and thus not absolute in every conceivable fact situation. The presence of financial responsibility laws have not, ipso facto, mandated that courts find coverage where an insured expressly restricts a vehicle's use. *See Shelter Mut. Ins. Co. v. LittleJim,* 927 F.2d 1132 (10th Cir.1991); *Norman v. King,* 163 Vt. 612, 659 A.2d 1123 (1995).

[¶ 22.] This Court interprets statutes according to their plain and ordinary meaning. *Cimarron,* 479 N.W.2d at 886. In the present case, SDCL 32–35–113 merely mandates insurance coverage in accordance with SDCL 32–35–70 which requires "the express or implied permission of the named insured." With respect to implied permission, the first permittee is merely a conduit through which implied permission flows from the named insured to the second permittee. The permission envisioned by the omnibus clause is "something more than mere sufferance or tolerance without taking steps to prevent." *M.F.A. Ins. Co. v. Mendenhall,* 205 Neb. 430, 288 N.W.2d 270, 275 (1980).

[¶ 23.] We do not find implied permission here. David prohibited Carl from loaning David's vehicle throughout Carl's adolescence

---

**3.** Believing the rule to be overly harsh in limited circumstances some courts have developed methods of avoiding such a severe result by finding implied permission. Couch notes that the harsh result has been avoided and the secondary permittee will be allowed recovery "when the second permittee is operating the vehicle for or on behalf of the first permittee." *Couch on Insurance* § 45:411, at 782 (citations omitted). Ragatz was using the vehicle for his own benefit and not on behalf of Carl.

Another instance where courts are willing to find implied permission is where the first permittee is a passenger in the vehicle while the second permittee is driving. *Cascade Ins. Co. v. Glacier General Ins. Co.,* 156 Mont. 236, 479 P.2d 259 (1971). It is undisputed that Carl was not in the pickup at the time of the accident.

Some courts consider a familial relationship between the first and second permittees or the

named insured and the second permittee a material factor in finding implied permission. *State Farm Mut. Auto. Ins. Co. v. Williamson,* 331 F.2d 517 (9th Cir.1964). Ragatz has no familial relationship to the McGaughs and may not be considered an omnibus insured under this exception.

Couch has also noted a finding of implied permission where a named insured, who previously had prohibited delegation, acquiesced in a "repeated pattern of delegation." *Couch on Insurance* § 45:411, at 782–83 (citations omitted). In the instant case, David had no knowledge that Carl had ever violated his prohibition against delegation in the past, so he could not be said to have acquiesced to Carl's delegation to Ragatz.

As none of the exceptions which have been recognized in other jurisdictions apply factually to the case now before us, we do not determine whether or not it is appropriate for South Dakota to adopt them.

and into his adult life. When confronted with this at a deposition, Carl testified, "Rules are made to be broken." Prior to the accident, David neither had a reason to believe nor knowledge that Carl had ever broken his rule against third-party use. Ragatz obtained possession and use of the pickup on the day of the accident without David's knowledge or authority.

[¶ 24.] Today we adopt the intermediate moderate or "minor deviation" rule which sits between the harsh results of the conversion and initial permission rules. The "minor deviation" rule provides that once permission is conferred, the protection afforded by the omnibus clause will not terminate unless the permittee commits a material violation or deviation from the terms of the permission conferred or contemplated at the time permission was given in the first instance. *See Farmers Mut. Auto. Ins. Co. v. Noel,* 211 F.Supp. 216 (W.D.Mo.1962); *Mt. Beacon Ins. Co. v. Williams,* 296 F.Supp. 1094 (D.C.Md.1969); *Couch on Insurance* § 45.475, at 863.

[¶ 25.] *Couch* advances the following concerning the intermediate approach:

> This is the most reasonable approach to the permission problem in that it furthers the public policy of compensating victims, recognizes that permittees are engaged in various activities and may stray from the exact letter of their permission, and it attempts to be fair to the insurer in that it will not expose the insurer to all possible liability arising from use of the vehicle with the initial permission of the insured.

*Id.* at 866. *See also Hall v. Wilkerson,* 926 F.2d 311 (3d Cir.1991); *James v. Aetna Life & Cas.,* 26 Ariz.App. 137, 546 P.2d 1146 (1976); *Kobetitsch v. American Mfrs. Mut. Ins. Co.,* 390 So.2d 76 (Fla.Dist.Ct.App.1980); *Cameron Mut. Ins. Co. v. Chitwood,* 609 S.W.2d 492 (Mo.Ct.App.1980); *James v. Vigilant Ins. Co.,* 674 S.W.2d 925 (Tex.App.1984); *Foote v. Grant,* 56 Wash.2d 630, 354 P.2d 893 (1960). This rule reflects a flexible, balanced approach, between permittees and automobile owners and their insurers.

[¶ 26.] Application of this rule requires a determination, whether the deviation was "minor" or "material," taking into account the "extent of deviation in actual distance or time, the purpose for which the vehicle was given, and other factors." *Couch on Insurance* § 45.475, at 866. A deviation is material if it is "alien or foreign to the original permitted objective or operation." *Id.* (citations omitted). Carl's deviation is certainly material since the objective of the permission granted by David was that Carl use the vehicle temporarily, not Ragatz.

[¶ 27.] **2. Whether the grant of summary judgment in favor of State Farm was proper?**

[¶ 28.] SDCL 15–6–56(e) concerns the form of affidavits for summary judgments and provides in part:

> When a motion for summary judgment is made and supported as provided in § 15–6–56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in § 15–6–56, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

[¶ 29.] In reviewing summary judgments, we decide only whether a genuine issue of material fact existed and whether the law was correctly applied. If there exists any basis to support the trial court's ruling, affirmance of a summary judgment is proper. *Garrett,* 459 N.W.2d at 837. There is nothing in the record either by way of affidavit, deposition, answers to interrogatories, or admissions of a party setting forth facts to controvert the deposition testimony of David and Carl. This deposition testimony, along with the pleadings, was the only source of information upon which the motion for summary judgment could be based. Uncontroverted was the testimony that David had not authorized, expressly or impliedly, Ragatz to use his vehicle. Thus, there is a sufficient basis to support summary judgment in favor of State Farm. We find appellant's additional contentions to be without merit.

[¶ 30.] We affirm.

[¶ 31.] SABERS, AMUNDSON and KONENKAMP, JJ., concur.

[¶ 32.] MILLER, C.J., concurs in result.

MILLER, Chief Justice, concurring in result.

[¶ 33.] Although I am in general agreement with the majority holding, I see no need to adopt one of the *Couch* rules, as the majority has done in ¶ 24. I further disagree with its expression in ¶ 18 that it is necessary to determine the effect of Carl's disobedience. The "minor deviation rule" that the majority adopts is triggered "once permission is conferred." In this case, not only was there no permission of any kind for Carl to

lend the pickup to Ragatz, but there was also a history of express admonitions.[4]

[¶ 34.] South Dakota law unambiguously requires either express or implied permission. From my perspective the law is settled and the facts are clear. There was no express or implied permission for Ragatz to drive David's vehicle. What more needs to be said?

---

4. It also bears noting again that the four exceptions the majority cites to in footnote 3, in which courts have found implied permission despite express admonitions to the contrary, are not applicable here. This is an easy case: Ragatz was not using the vehicle for Carl's benefit; Carl was not a passenger in the vehicle; Ragatz had no familial relationship with the McGaughs; and David never acquiesced in a "repeated pattern of delegation."