#25077-rev & rem-SLZ

**2010 SD 8**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE FARM AUTOMOBILE
INSURANCE COMPANY,                                    Plaintiff and Appellee,
          v.
WILLIAM GERTSEMA, as Guardian
ad litem for SHANE GERTSEMA,
a minor,                                                              Defendant
          and
TONY GERTSEMA, as Guardian
ad litem for JOZETTE GERTSEMA,
a minor,                                                              Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE THIRD JUDICIAL CIRCUIT
GRANT COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE RONALD K. ROEHR
Judge
\* \* \* \*

ROY A. WISE
ZACHARY W. PETERSON of
Richardson, Wyly, Wise, Sauck,
 & Hieb, LLP                                              Attorneys for plaintiff
Aberdeen, South Dakota                            and appellee.

DAVID J. KING of
Alvine & King, LLP                                    Attorneys for defendant
Sioux Falls, South Dakota                         and appellant.

\* \* \* \*

ARGUED OCTOBER 5, 2009

OPINION FILED **02/03/10**

#25077

ZINTER, Justice

[¶1.]	Jozette Gertsema was injured while riding as a passenger on an all

terrain vehicle (ATV) driven by her cousin Shane Gertsema.  Calvin and Laci

Hanson (Hansons) purchased the ATV for their daughter Brittany, and Hansons

were the named insureds under a recreational vehicle insurance policy issued by

State Farm Automobile Insurance Company.  State Farm filed this action seeking a

declaration that there was no coverage for medical payments or liability under the

policy.  Jozette claimed coverage, arguing that Shane was an insured under the

policy's omnibus clause because Hansons' children, Brittany and Jacob, had given

Shane permission to drive the ATV.  The circuit court granted summary judgment

in favor of State Farm.  The circuit court found that there was no implied

permission flowing from the Hansons through their children because Shane's

operation of the ATV violated the Hansons' rules for its use.  We conclude that there

are disputed issues of material fact regarding implied permission.  Therefore, we

reverse and remand.

*Facts and Procedural History*

[¶2.]	In reviewing this summary judgment, we restate the facts in a light

most favorable to Jozette.  In July 2005, Hansons purchased the ATV for their

thirteen-year-old daughter, Brittany.  State Farm subsequently issued a

recreational vehicle insurance policy covering the ATV.  The policy named Calvin

and Laci as insureds and provided both medical payments and liability coverage.

Liability coverage was provided for the "insureds," which included "any other person

while using such vehicle if its use or operation [was] within the scope of consent of

-1-

[the Hansons]." Medical payments coverage was also provided if the vehicle was being used by an insured.

[¶3.] In October 2005, Jacob, the Hansons' son, drove the ATV on a road from the Hanson farm to the Eli Hickman farm.[1] The record reflects that Eli Hickman, Alex Blue, Shane Gertsema, and Jozette Gertsema, friends of the Hansons' children, arrived at Hickman's residence where the ATV was parked. In Jacob's presence, but without asking for express permission, Alex began driving the ATV. Jacob indicated that he saw Alex "[tear] around a little bit." Jacob did not object to or stop Alex's use of the ATV.[2]

[¶4.] After Alex finished riding, Shane and Jozette began using the ATV. Shane drove and Jozette was a passenger. Like Alex, neither had asked for express permission from Jacob or his parents. Shane, however, testified that earlier in the day, Brittany had twice given him permission to use the ATV. According to Shane, he first obtained permission from Brittany in person at a bowling alley. He indicated that the second permission from Brittany occurred by cell phone as he was driving to the Hickman farm.

---

1. For purposes of summary judgment, Hansons concede they gave Jacob permission to drive the ATV.

2. At oral argument, State Farm argued that Alex, in accordance with the Hansons' "rules," drove the ATV only on Hickman's driveway and "never went out on the road." Shane, however, testified that Alex "went out of the driveway, he took a right and went a little ways down and then turned back around and came in." Shane elaborated that Alex drove "about half a mile," and that Alex "didn't [just] go to the end of the driveway. He went farther than that." Jozette testified that Alex "left the farmyard" and was gone for "a couple minutes." For purposes of reviewing the summary judgment, we must accept Shane's and Jozette's version of these events.

[¶5.]     During their ride, Shane and Jozette left Hickman's driveway and drove onto a road. Shortly thereafter, Shane returned to Hickman's house alone on the ATV with two flat tires. Shane indicated that he had lost control of the ATV and it rolled. Jozette was seriously injured.

[¶6.]     Following the accident, Jozette sought medical payment benefits and contended that liability coverage was available under State Farm's policy. State Farm subsequently commenced this action and moved for summary judgment based upon affidavits and deposition testimony. Jozette resisted the motion, arguing that coverage was available because Shane was an insured under the policy. Jozette contended that Shane was an insured because he had implied permission, either from the Hansons or as a second permittee through Hansons' children, Jacob and Brittany. State Farm argued that any implied permission flowing from the Hansons was ineffective because Shane's use violated rules that Hansons had set for other children's use of the ATV. According to State Farm, "other kids had to have [Hansons'] permission to operate the ATV," and Hansons "were not okay with the ATV being used away from their house and without their knowledge." Jozette responded, arguing that summary judgment was inappropriate because there were disputed facts whether such rules existed, their scope, and whether they were enforced.

[¶7.]     The circuit court found that Hansons provided no express permission and they had rules restricting use of the ATV by other children. According to the court: "The ATV was only supposed to be used only in the yard and driveway at

home, not on the road, and when Laci or Calvin Hanson were home." The circuit

court also found that if:

> Brittany or Jacob did give Shane permission to drive the
> ATV, it would have been a material deviation from the
> rule that the ATV was only to be driven by friends if Laci
> and Calvin Hanson were present, and it would also be a
> material deviation from the rule against driving the ATV
> on the road.

Because the circuit court found that Shane's use materially violated these rules, it

concluded that there was no implied permission triggering the omnibus clause of

the policy.

*Decision*

[¶8.]        There is no dispute that Hansons, the named insureds, did not give

Shane express permission to use the ATV. Therefore, the issue is whether there are

genuine issues of material fact regarding implied permission either from the

Hansons, or more indirectly through Brittany and Jacob. Our standard of review is

well established.

> Summary judgment is authorized "if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with
> the affidavits, if any, show that there is no genuine issue as to
> any material fact, and that the moving party is entitled to
> judgment as a matter of law." We will affirm only when there
> are no genuine issues of material fact and the legal questions
> have been correctly decided. All reasonable inferences drawn
> from the facts must be viewed in favor of the non-moving party.
> The burden is on the moving party to clearly show an absence of
> any genuine issue of material fact and an entitlement to
> judgment as a matter of law.

Estate of Trobaugh v. Farmers Ins. Exch., 2001 SD 37, ¶ 16, 623 NW2d 497, 501

(citations omitted). "When reviewing a grant of summary judgment, we are not

bound by the trial court's factual findings, but, rather, must undertake an independent review of the record." *Id.* ¶ 17, 623 NW2d at 501.

[¶9.] The omnibus insured provision of State Farm's policy provided coverage for any driver who used the vehicle within the insureds' scope of consent. In accordance with SDCL 32-35-70, this provision extended coverage to non-insureds who used the vehicle with the implied permission of the named insureds.[3] In cases of implied permission, "the burden of proof [is on] the party attempting to show the driver had implied permission since the driver of the vehicle [is] a stranger to the policy." State Farm Mut. Auto. Ins. Co. v. Ragatz, 1997 SD 123, ¶ 16, 571 NW2d 155, 158. Therefore, in order to prevent summary judgment on this issue, Jozette[4] had the burden of identifying disputed issues of fact regarding implied permission.

*Implied Permission from Hansons*

[¶10.] To establish implied permission, there must be a "showing of a course of conduct or practice known to the owner and acquiesced in by him that would lead to an application of permission for a particular venture." *Trobaugh*, 2001 SD 37, ¶

---

3.     SDCL 32-35-70 provides in part:

> An owner's policy of liability insurance referred to in § 32-35-68 shall insure the person named therein *and any other person as insured, using any insured vehicle or vehicles with the express or implied permission of the named insured,* against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of the vehicle[.]

(Emphasis added.)

4.     Shane has not appealed the circuit court's ruling.

23, 623 NW2d at 502 (citing *Western Cas. & Surety Co. v. Anderson*, 273 NW2d 203, 205 (SD 1979)). The following factors are considered:

> [P]ast and present conduct of the insured, relationship between the driver and the insured, and usage and practice of the parties over an extended period of time prior to the use in question.
>
> \* \* \*
>
> [T]he usage and practice of the parties must be such that would indicate to a reasonable mind that *the driver had the right to assume permission under the particular circumstances.*

*Id.* (emphasis added).

[¶11.]     "The issues involving the past and present conduct of the insured and the usage or practice of the parties over time are closely related." *Id.* ¶ 25, 623 NW2d at 502. In this case, there is a clear inference that Hansons were aware the friends of their children often used the ATV. Indeed, the Hansons' own affidavits and testimony alleged that they adopted rules attempting to restrict use of the ATV by their children's friends. Moreover, Laci stated to the insurance adjuster that she was "sure" Jozette had driven the ATV prior to the accident. Brittany testified that Jozette "had clearly driven [the ATV] before [the accident]." And, Jozette indicated that she used the ATV with Brittany forty or fifty times on and off the Hansons' farm at times when the Hansons were and were not present.

[¶12.]     Because Jozette and Brittany were good friends and had used the ATV many times when Hansons were present, an inference exists that Hansons may have allowed Jozette to use the ATV. Relationships may lead to the "probabil[ity]" of permissive use. *See id.* ¶¶ 24, 25, 623 NW2d at 502. An inference that Hansons would have acquiesced to Jozette and Shane's use of the ATV on the day in question was created by this relationship and by evidence that the Hansons entrusted

Brittany with the authority to allow other children to drive the ATV. Laci testified that she bought the ATV for Brittany as a birthday present, that it was Brittany's ATV, and that Brittany usually kept and controlled the keys. Brittany testified that it was her ATV, that she kept the keys, and that she could decide which friends could ride the ATV. Brittany was asked:

> Q: [T]hey [the Hansons] made the independent judgment that you were mature enough to operate the ATV?
>
> A: Correct.
>
> Q: And they [the Hansons] made the independent judgment that you were mature enough to let other people like Jozette . . . operate that ATV?
>
> A: As long as we weren't doing anything stupid.
>
> Q: And the same can be said for Shane. Shane could have driven that ATV, as long as he didn't do anything stupid?
>
> A: Right.

Alex confirmed Brittany's apparent authority, testifying that he never asked the Hansons for permission to ride the ATV because Brittany's "permission would have been enough[.]"

[¶13.] Viewing the evidence in the light most favorable to Jozette, an inference can be drawn that the Hansons allowed Brittany to determine who could operate the ATV. This inference, together with the fact that Brittany twice gave express permission for Shane to use the ATV on the day in question, was sufficient to create a further inference that Shane "had the right to assume permission under the particular circumstances." *See Trobaugh*, 2001 SD 37, ¶ 23, 623 NW2d at 502. Considering the Hansons' knowledge that friends of their children were using the

ATV, Jozette's extensive prior use of the ATV, and the fact that Jozette and Brittany were good friends, this case is similar to that presented in *Trobaugh*: "[t]he circumstances strongly suggest that [this] usage and practice of the parties remained constant." *Id*. ¶ 25, 623 NW2d at 503. Furthermore, even though Hansons argue that Brittany "did not have carte blanche to allow her friends to drive the ATV," courts have found implied permission where a named insured, who previously had prohibited delegation, acquiesced in a "repeated pattern of delegation[.]" *Ragatz*, 1997 SD 123, ¶ 18 n3, 571 NW2d at 159 (citing *Couch on Insurance* § 45:411, at 782-83). Considering the extensive use of the ATV by Jozette and other children, and considering Brittany's testimony regarding delegation, it is for a jury to determine whether Hansons, in light of their conduct, usage, and practice, impliedly consented to the use of the ATV.

*Implied Permission Under the Permittee/Second Permittee Theory*

[¶14.]     Jozette argues that coverage is also available under the theory that Brittany and Jacob, as permittees of their parents, either expressly or impliedly consented to Shane and Jozette's use of the ATV. It is generally held that if a permittee exercises broad dominion and control over an insured vehicle, even if not a named insured, that permittee can be found to have the authority to grant permission to a third party to use the vehicle. *See* Allied Group v. Allstate Ins. Co., 123 Idaho 733, 852 P2d 485 (1993); Auto Club Inter-Ins. Exchange v. McClanahan, 607 SW2d 718 (Mo 1980); American Mut. Fire Ins. Co. v. Reliance Ins. Co., 268 SC 310, 233 SE2d 114 (1977); Foote v. Douglas County, 29 Wis2d 602, 139 NW2d 628 (1966). *See also* State Farm Mut. Auto. Ins. v. Auto. Underwriters, Inc., 371 F2d

999 (7thCir 1967). We have adopted this theory of liability concluding that "the first permittee is merely a conduit through which implied permission flows from the named insured to the second permittee." *Ragatz,* 1997 SD 123, ¶ 22, 571 NW2d at 159. However, this theory is qualified. The second permittee's implied permission is limited to situations where the delegated authority is not in violation of the named insured's restrictions. For example:

> If the owner of the car expressly forbids the permittee to lend his car to another, but the permittee nevertheless allows a second permittee to drive the car in violation of the named insured's express orders, the insurer is not liable while the second permittee is driving, on the theory that a prohibition against delegation is a restriction upon the use of the vehicle. [Therefore, the second permittee] is not an omnibus insured.

*Id*. ¶ 18, 571 NW2d at 159 (citing 12 *Couch on Insurance* 2d (RevEd) § 45:410, at 778 (1981)).[5] In applying this limitation, we adopted the "minor deviation" rule. Under that rule, "once permission is conferred, the protection afforded by the omnibus clause will not terminate unless the permittee commits a material

---

5. At oral argument, State Farm argued that implied permission was precluded because Jozette cannot meet any of the four implied permission scenarios discussed in footnote three of *Ragatz*. This footnote recognized that in order to avoid a harsh result, "some courts" have found an implied permission: (1) when the second permittee is operating the vehicle on behalf of the first permittee; (2) if the first permittee is a passenger in the vehicle while the second permittee is driving; (3) when a familial relationship exists between the first and second permittees or the named insured and the second permittee; or (4) when the named insured, who had previously prohibited delegation, acquiesced in a "repeated pattern of delegation." *Ragatz,* 1997 SD 123, ¶ 18 n3, 571 NW2d at 159. In *Ragatz*, however, we specifically declined to "determine whether or not it is appropriate for South Dakota to adopt [the exceptions]." *Id.* Furthermore, we did not suggest this list was exclusive. Most importantly, as was previously discussed, there is an inference of fact suggesting that even if the Hansons had restrictive rules, they may have acquiesced in a repeated pattern of delegation by Brittany.

violation or deviation from the terms of the permission conferred or contemplated at the time permission was given in the first instance." *Id*. ¶ 24, 571 NW2d at 160 (citation omitted).

[¶15.]    Under the permittee theory, we must first determine whether Shane had permission from Jacob or Brittany. Although State Farm concedes that Jacob had permission to operate the ATV on the day of the accident, State Farm argues that Shane was not Jacob's permittee because "the undisputed material facts of this case reveal that Shane . . . lacked permission [from Jacob] to use the Hansons' ATV[.]" For purposes of summary judgment, we disagree. We believe that there is a genuine issue of disputed fact concerning this issue.

[¶16.]    There is testimony in the record inferentially indicating that Jacob not only acquiesced to Shane's use of the ATV, he allowed it. Jacob testified that Shane could drive the ATV at the Hickman farm without his parents' permission, so long as Shane remained "around" Jacob:

> Q: You're there (at the Hickman farm), and they (Shane and Jozette) have your permission as long as they follow your rules and stay around you; correct?
>
> A: Yes. Yes.

Shane also testified that Jacob "could have stopped us before we left [on the ATV]," and that Jacob "pretty much knew. [He] pretty much had it figured out what we were going to do." Shane finally indicated that he understood he had Jacob's permission:

> Q: Okay. There is a difference between [Jacob] knowing and [Jacob] giving permission. *Did you think you had Jacob's permission to drive that four-wheeler that afternoon?*

> *A: Yes.*

(Emphasis added.) Moreover, there is record evidence that Brittany twice gave Shane express permission to drive the ATV on the day of the accident. Therefore, Jozette presented sufficient conflicting evidence for a jury to determine whether Jacob and/or Brittany gave Shane permission to operate the ATV that day.

*Hansons' Rules for Use of the ATV*

[¶17.] State Farm argues that even if Jacob or Brittany provided permission, that permission materially violated rules Hansons had established for use of the ATV. State Farm contends that those rules confined use of the ATV to the Hansons' farm yard, and that non-family children could not drive the ATV without the Hansons' permission or without the Hansons' children on the ATV. State Farm also contends that a month before the accident, Hansons adopted additional rules further restricting the use of the ATV. In State Farm's statement of undisputed facts and in Calvin's and Laci's affidavits, they allege that a month prior to the accident, Hansons had "strengthened our rules regarding the use of the ATV; only our children were allowed to use it. Prior to that time, other children visiting our property were only permitted to use the ATV on the property when they were with Jacob or Brittany." We observe, however, that the depositions of Hansons' children, as well as the depositions of Alex, Shane, and Jozette, contradict these asserted facts.

[¶18.] Hansons' son Jacob testified that on the day of the accident, Alex, who used the ATV immediately before Shane, did not need Hansons' permission to use the ATV. Jacob indicated that it was not unusual for someone to get on the ATV

and drive it without asking permission from his parents. Jacob testified that the only restriction on use of the ATV was his or Brittany's presence, and there was no new rule or policy established by his parents:

Q: Now, in order for somebody to operate the ATV, you guys, *you or Brittany* had to be there?

A: Uh-huh (Yes).

Q: And that's a true statement of the rule?

A: Yes.

Q: Okay. Now, was there any change in that rule at any time?

A: No.

[¶19.] Brittany also contradicted Hansons' evidence regarding rules. As previously indicated, Brittany testified that her parents had entrusted her with authority to permit others to use the ATV. The clear inference from her testimony was the only restriction on her authority to allow use by her friends was that they were not to do "anything stupid." *See supra* ¶ 12. She further testified that, as far as she knew, there was just one policy and she was not aware of any changes in that policy.

[¶20.] Alex, Shane, and Jozette also contradicted the Hansons' affidavits regarding rules. Alex testified that under his understanding of the rules, he did not have to ask Hansons for permission to ride the ATV on the day of the accident, that he had never asked Hansons for permission to drive the ATV, and that no one ever told him that there had been a change in policy. Similarly, Shane was unaware of any rules or restrictions. He testified he had "just heard people just kind of like talk about this four-wheeler a lot and just messing around." Finally, Jozette, after using

the ATV on forty or fifty occasions on and off the Hansons' farm when the Hansons were and were not present, testified that she was unaware of any rule prohibiting "the kids" from operating the ATV when the Hansons were not present.

[¶21.]     Because the foregoing evidence conflicts with Hansons' affidavits and statement of undisputed material facts regarding the existence, scope and enforcement of rules, the circuit court erred in finding no factual dispute on this issue.  A jury must determine whether the permission for Shane's use was a material deviation from any rules governing use of the ATV.

*Conclusion*

[¶22.]     Viewing the evidence in a light most favorable to Jozette, an inference can be drawn that Shane's use of the ATV was part of a course of conduct, practice and usage known to the Hansons and acquiesced in by them.  Additionally, a question of fact remains as to whether Jacob and/or Brittany gave Shane permission to operate the ATV on the day of the accident.  Finally, a dispute of fact exists whether the alleged permission for Shane's use was a material deviation from any established and enforced rules.[6]

[¶23.]     Reversed and remanded for further proceedings consistent with this opinion.

---

6.     Jozette also appeals the circuit court decision denying her motion to strike the affidavits of Calvin and Laci Hanson in support of summary judgment. In light of our remand, we need not address this issue.

[¶24.]	GILBERTSON, Chief Justice, and KONENKAMP, MEIERHENRY, and SEVERSON, Justices, concur.